# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### EL PASO DIVISION

| | | |
|---|---|---|
| STATE OF TEXAS,<br>　　　Plaintiff, | §<br>§<br>§ | |
| v. | §<br>§ | |
| YSLETA DEL SUR<br>PUEBLO, the TRIBAL<br>COUNCIL, and the<br>TRIBAL GOVERNOR<br>CARLOS HISA or his<br>SUCCESSOR,<br>　　　Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§ | EP-17-CV-179-PRM |

## ORDER DENYING MOTION TO DISMISS

On this day, the Court considered Defendants Ysleta del Sur Pueblo, the Tribal Council, and the Tribal Governor Carlos Hisa's [hereinafter collectively referred to as "Defendants"] "Motion to Dismiss First Amended Complaint" (ECF No. 13) [hereinafter "Motion"], filed on August 29, 2017, the State of Texas's [hereinafter "Plaintiff"] "Response to Defendants' Motion to Dismiss First Amended Complaint" (ECF No. 15) [hereinafter "Response"], filed on September 11, 2017, and Defendants' "Reply in Support of Motion to Dismiss First Amended Complaint" (ECF No. 19) [hereinafter "Reply"], filed on September 25, 2017, in the above-captioned cause. After due consideration, the Court will deny Defendants' Motion for the reasons that follow.

# I.  BACKGROUND

This case is the latest iteration of a long-running dispute between Plaintiff and Defendants regarding enforcement of Texas gaming law on the Ysleta del Sur Pueblo [hereinafter "Pueblo" or "the Tribe"] reservation. While it is unnecessary to delve into a comprehensive history of the litigation and factual background, the Court will recite the facts relevant to determining this Motion.

In 1987, the United States enacted the Restoration Act ("the Act"), which "restored trust responsibility for the Pueblo to the federal government" from the State of Texas. Mot. 4. The Act delineates the nature of the federal trust relationship and contains provisions regarding, inter alia, federal recognition of the Tribe, the rights and privileges of the Tribe (including eligibility for federal services and assistance), the relationship between federal, state, and tribal authority, and permanent physical improvements to the reservation. *See generally* Ysleta del Sur Pueblo and Alabama and Coushatta Indian Tribes of Texas Restoration Act, Pub. L. No. 100–89, 101 Stat 666 (1987). Most importantly for purposes of this case, the Act governs "Gaming Activities" conducted on the reservation [hereinafter "Pueblo gaming"]. *Id.* at § 107.

Section 107 of the Act contains two provisions relevant to deciding the Motion. Section 107(a), in pertinent part, provides that:

> All gaming activities which are prohibited by the laws of the State of Texas are hereby prohibited on the reservation and on lands of the tribe. Any violation of the prohibition provided in this subsection shall be subject to the same civil and criminal penalties that are provided by the laws of the State of Texas.

Section 107(c) provides that "the courts of the United States shall have exclusive jurisdiction over any offense in violation of subsection (a) [i.e., the section prohibiting all gaming activities prohibited by the State of Texas] . . . ."

The effect of subsections (a) and (c) of the Act is to federalize Texas gaming law, which currently operates "as surrogate federal law on the Tribe's reservation in Texas." *Ysleta del Sur Pueblo v. State of Tex.*, 36 F.3d 1325, 1334 (5th Cir. 1994). Essentially, any activity prohibited pursuant to Texas law is prohibited pursuant to federal law. While Texas has many laws prohibiting gambling, the State does not consider all gaming activity to constitute unlawful gambling. Thus, "[n]ot all gaming activities are prohibited to the Tribe, only those gaming activities that are prohibited by Texas law to private citizens and other organizations. As such, the Tribe may participate in legal gaming activities." *Texas v. del Sur Pueblo*, 220 F. Supp. 2d 668, 707 (W.D. Tex. 2001), *modified* (May 17, 2002), *aff'd*, 31 F. App'x 835 (5th Cir. 2002), *and aff'd sub nom. State of Texas v. Pueblo*, 69 F. App'x 659 (5th Cir. 2003), *and order clarified sub nom. Texas v. Ysleta del Sur Pueblo*, No. EP-99-CA-320-H, 2009 WL 10679419 (W.D. Tex. Aug. 4,

2009) [hereinafter "Judge Eisele Order"]. The current dispute involves whether Defendants' operation of "electronic bingo" machines violates Texas gaming law and, thus, whether it violates federal law pursuant to the Act. Original Compl. for Decl. and Inj. Relief 1, June 7, 2017, ECF No. 1.

While Defendants make multiple arguments throughout their many filings in this case in favor of ultimately dismissing the cause, their Motion specifically concerns the Texas attorney general's ["AG"] capacity to sue Defendants in federal court for injunctive relief from their gaming activities. This issue has been thoroughly litigated in previous lawsuits involving the same parties. *See* Judge Eisele Order 691–95 (accepting and adopting two previous orders issued by Judge Hudspeth discussing the AG's capacity to sue to enforce the Restoration Act). In summary, both Judge Eisele and Judge Hudspeth concluded that the Texas AG lacks capacity to bring suit on behalf of the State unless an affirmative grant of statutory authority empowers him or her to bring that specific type of suit. *See* Judge Eisele Order 693 (citing *Texas v. Ysleta del Sur Pueblo*, 79 F. Supp. 2d 708, 712 (W.D. Tex. 1999), *aff'd sub nom. State v. Ysleta del Sur*, 237 F.3d 631 (5th Cir. 2000)) ("The burden of proof rests with the AG to identify a source of power authorizing him to [bring suit] on behalf of the state.").

However, both judges agreed that a suit to abate a common nuisance pursuant to Texas Civil Practice & Remedies Code § 125.002

4

provides a source of affirmative authority for the attorney general to sue on behalf of Texas. *Id.* Texas nuisance law provides that: "A suit to enjoin and abate a common nuisance . . . may be brought by an individual, by the attorney general, or by a district, county, or city attorney." Tex. Civ. Prac. & Rem. Code § 125.002. The nuisance statute provides that:

> A person who maintains a place to which persons habitually go for the following purposes and who knowingly tolerates the activity and furthermore fails to make reasonable attempts to abate the activity maintains a common nuisance:
> . . .
>
> (5) gambling, gambling promotion, or communicating gambling information as prohibited by the Penal Code[.]

*Id.* at § 125.0015. Thus, both judges ultimately held that the AG retained capacity to sue provided that he or she sought relief pursuant to Texas's nuisance statute. Judge Eisele Order 676 n.5, 693.

In this case, Defendants once again renew their capacity to sue argument based on a 2017 amendment to the nuisance statute. The statute now provides, notwithstanding the fact that gaming in violation of Texas law is a nuisance, that "[t]his section does not apply to an activity exempted, authorized, or otherwise lawful activity regulated by federal law." Tex. Civ. Prac. & Rem. Code § 125.015(e). Defendants claim that because Pueblo gaming is "exempted," "authorized," or an

5

"otherwise lawful activity regulated by federal law," it should no longer be considered a nuisance pursuant to state law. Mot. 7. Thus, they argue that the AG now lacks capacity to sue based on a nuisance stemming from Pueblo gaming activities and accordingly, that this suit should be dismissed. For the foregoing reasons, the Court disagrees and declines to dismiss the case.

## II.  LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action for "failure to state a claim upon which relief can be granted." In determining whether a plaintiff states a valid claim, a court "accept[s] all well-pleaded facts as true and view[s] those facts in the light most favorable to the plaintiffs." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A pleading that offers mere "'labels and conclusions' . . . will not do," especially when it simply

6

tenders "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (second alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557).

In addressing a capacity claim, a Rule 12(b)(6) motion is appropriate "given that a court cannot grant relief to a party lacking capacity to sue." *Texas v. Ysleta del Sur Pueblo*, 79 F. Supp. 2d at 712.

## III. ANALYSIS

As an initial matter, the Court sees no purpose in deviating from Judge Hudspeth's well-reasoned opinion concerning the limitations on the Texas attorney general's capacity to bring suit. As Judge Hudspeth noted, Texas law makes clear that "the Texas AG is powerless to act in the absence of explicit statutory or constitutional authorization." *Texas v. Ysleta del Sur Pueblo*, 79 F. Supp. 2d at 712 (citing *Day Land & Cattle Co. v. State*, 4 S.W. 865, 867 (1887) (holding that "in a government in which the duties of all officers, as well as their powers, are defined by written law," the Texas attorney general lacks capacity to bring suit absent "a clear recognition by the legislature of the power of the attorney general to institute and maintain [a suit] in the name and on behalf of the state"); and *Garcia v. Laughlin*, 285 S.W.2d 191, 195 (1955) (quoting *State ex rel. Downs v. Harney*, 164 S.W.2d 55, 56 (Tex. Civ. App.—San Antonio 1942, writ ref'd w.o.m)) ("As the powers and duties of the Attorney General are prescribed by the Constitution and Statutes, those powers must be limited to those so prescribed, and

may not be enlarged by the courts.")). No law in the period following Judge Hudspeth's opinion has called this well-settled principle into question. Because Plaintiff has not identified any other source of statutory authority to enforce gambling prohibitions, the Court will continue to assume that the state common nuisance statute is the only basis on which the AG's capacity to bring suit rests.

Thus, determining whether to dismiss this case requires assessing whether the relevant nuisance statute continues to provide the AG with authority to seek relief on behalf of the State from Pueblo gaming activities. This requires determining whether Pueblo gaming is (1) "exempted" by federal law; (2) "authorized" by federal law; or (3) "otherwise lawful activity regulated by federal law." If Pueblo gaming qualifies as any of these three, then it does not constitute a nuisance pursuant to Texas law, and thus is not illegal under federal law. In their Motion, Defendants argue that this new amendment to the nuisance statute applies to Pueblo gaming and that it is Plaintiff's burden to show that "the complained of activity is somehow NOT either exempted, or authorized, or otherwise lawful activity, or regulated by federal law." Reply 2. However, because the Court holds that Pueblo gaming is not subject to the recently-added exception[1] to the nuisance statute, Defendants' argument fails.

---

[1] The Court will use the term "exception" whenever referring to the Texas Civil Practice and Remedies Code § 125.0015(e) carve-out, which

First, gaming activities are generally not "authorized" on the reservation. It is true that some limited gaming is authorized as long as it is consistent with Texas law. Hence, if the specific gaming activity at issue were legal, it would be authorized by federal law, and would not constitute a nuisance. However, without ultimately determining whether the gaming activity at issue here is legal—i.e., determining the merits of this case—it is impossible to conclude whether the activity in question is indeed authorized or prohibited under federal law. Thus, it is technically impossible to determine the AG's capacity to sue until the Court makes a determination on the merits. This, of course, is unworkable—the Court must make a preliminary determination regarding Plaintiff's capacity to sue before proceeding to any inquiry on the merits. The Court thus holds that for purposes of determining Plaintiff's capacity to sue, it is sufficient to conclude that Plaintiff has pleaded a plausible claim that Defendants are engaged in an activity in violation of Texas law. Because Plaintiff has pleaded such a claim, the alleged activity is not "authorized" by federal law for purposes of determining the AG's capacity to sue.

Second, the alleged activity is not an "otherwise lawful activity regulated by federal law." This argument raises a similar paradox as the last one: whether or not Defendants' activity is "otherwise lawful"

---

removes activities "exempted" by federal law from the ambit of the Texas code.

hinges on the Court's ultimate determination on the merits. Again, the Court accepts Plaintiff's well-pleaded allegations as sufficient to conclude at this stage that Defendants' activities are not "otherwise lawful." Therefore, regardless of whether the activity is regulated by federal law, it does not qualify for this prong of the nuisance exception.

Finally, Pueblo gaming is not "exempted" by federal law. Defendants aver that their activities do not constitute a nuisance because the nuisance statute does not apply to activities "exempted" by federal law. Specifically, they highlight section 107(b) of the Restoration Act, which states, "[n]othing in this section shall be construed as a grant of civil or criminal regulatory jurisdiction to the State of Texas." They argue that because the Pueblo are exempt from the authority of any Texas state regulatory body, they are "exempted" by federal law from the state nuisance statute. The Court disagrees. While the text of the nuisance statute is frustratingly vague regarding the parameters of this exception, the Court concludes that the unique relationship between the Restoration Act and state law does not amount to a federal "exemption" from state gaming law.

One who engages in an exempt activity is "free or released from a duty or liability to which others are held." Exempt, *Black's Law Dictionary* (10th ed. 2014); *cf. Matter of Volpe*, 943 F.2d 1451, 1452 (5th Cir. 1991) (discussing how in the bankruptcy context, certain personal property such as individual retirement accounts is exempt from the

10

bankruptcy estate, meaning that debtors are no longer subject to the duty of forfeiting the value of the property to creditors).  Thus, to qualify for the nuisance exception, federal law must explicitly waive or release a "duty or liability" imposed by state law upon entities engaging in a certain activity.  In this context, to qualify for the nuisance exception, federal law would have to free Defendants from gaming-related "duties or liabilities" to which Texas citizens would normally be subject.  However, rather than removing liability, the relevant federal statute in this case expressly prohibits Pueblo gaming to the same extent that Texas prohibits its own citizens from gaming.  The Act additionally provides that a violation of the federal statute is subject to the "same civil and criminal penalties that are provided by the laws of the State of Texas."  Restoration Act § 107(a).  Thus, the federal statute mandates nearly identical duties and liabilities for gaming as the State of Texas mandates.  Gaming on the Pueblo reservation is not "exempt" by federal law, it is merely codified in federal law as the mirror image of state law.

It is true, as Defendants argue, that state regulatory bodies may not exercise jurisdiction over the Pueblo pursuant to the Act.  This does, in a sense, "exempt" the Pueblo from certain responsibilities imposed by those regulatory authorities.  However, as explained above, this distinction does not constitute a wholesale federal exemption from Texas gaming law.  Defendants remain strictly subject to state gaming

law as long as that law is enforced by the appropriate entity in the appropriate forum—i.e., solely in federal court, and solely by a party with capacity to sue. The Act contemplates a gaming prohibition just as strict as that provided by state law, just without the regulatory regime that applies to all other entities within the state's jurisdiction.[2] Thus, while the enforcement mechanism for Texas gaming law is slightly different for Defendants than for other entities, Defendants are not "exempt" from state law as that term is used in the nuisance statute.

In addition to being the most straightforward reading of the nuisance statute, the Court's holding that Pueblo gaming is not subject to the exception is also consistent with the apparent purposes of the nuisance statute and the Restoration Act. *See Illich v. Household Furniture Co.*, 103 S.W.2d 873, 874 (Tex. Civ. App.—El Paso 1937, writ ref'd) ("Exemption statutes are to be liberally construed so as to carry into effect the purpose of the statute."). The Texas Civil Practice and Remedies Code § 125.0025 expressly provides the attorney general with the authority to seek an injunction to abate a nuisance, along with various civil penalties for violations of such an injunction. The Restoration Act mandates that Defendants are subject "to the same civil and criminal penalties that are provided by the laws of the State of

---

[2] Instead, the Act provides that "[t]he Secretary of the Interior or his designated representative may promulgate such regulations as may be necessary to carry out the provisions of this Act." Restoration Act § 2.

Texas." Thus, reading the Act to exempt Defendants from the nuisance statute would contradict the Act's express provision of coextensive civil penalties. Furthermore, while there is no statement of legislative purpose in the nuisance statute, the exception is most plausibly viewed as an attempt to avoid conflicts with federal statutes. Thus, construing the nuisance statute to exempt Pueblo gaming would effectively allow a provision in a state statute giving deference to federal law to completely undermine federal law.

Accordingly, the Court holds that the Texas nuisance statute still applies to the gaming activity at issue, and thus that the Texas attorney general maintains its capacity to bring suit to enjoin violations of the Restoration Act.

## IV. CONCLUSION

The Court concludes that the Texas attorney general, who is statutorily authorized to sue based on the Texas common nuisance statute, maintains the capacity to bring suit in this case.

Accordingly, Defendants Ysleta del Sur Pueblo, the Tribal Council, and the Tribal Governor Carlos Hisa's "Motion to Dismiss First Amended Complaint" (ECF No. 13) is **DENIED**.

SIGNED this ___26___ day of March, 2018.

PHILIP R. MARTINEZ
UNITED STATES DISTRICT JUDGE