IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| STATE OF TEXAS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | No: 03:17-CV-00179-PRM |
| v. | § | |
| | § | |
| YSLETA DEL SUR PUEBLO, | § | |
| THE TRIBAL COUNCIL, THE | § | |
| TRIBAL GOVERNOR MICHAEL | § | |
| SILVAS or his SUCCESSOR, | § | |
| | § | |
| Defendants. | § | |
| _____ | § | |
| | § | |
| YSLETA DEL SUR PUEBLO, | § | |
| THE TRIBAL COUNCIL, THE | § | |
| TRIBAL GOVERNOR MICHAEL | § | |
| SILVAS or his SUCCESSOR, | § | |
| | § | |
| Counter-Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| KEN PAXTON, in his OFFICIAL | § | |
| CAPACITY AS THE TEXAS | § | |
| ATTORNEY GENERAL, | § | |
| | § | |
| Counter-Defendant. | § | |
| | § | |

**PUEBLO DEFENDANTS' OPPOSED MOTION
AND MEMORANDUM IN SUPPORT OF MOTION
FOR RECONSIDERATION OF
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

**MOTION**

Ysleta del Sur Pueblo, the Tribal Council and Governor Michael Silvas or his Successor ("Pueblo Defendants") move this Court to reconsider its February 14, 2019 Memorandum Opinion and Order (ECF No. 183) granting the State of Texas's Motion for Summary Judgment ("Order No. 183").[1] Specifically, the Pueblo Defendants ask the Court to reconsider its holding that under Section 107(b) of the Restoration Act the State of Texas may use the federal courts to impose the State's gaming regulations on the Ysleta del Sur Pueblo. That holding is a manifest error of law as it is in direct conflict with *Ysleta I*'s confirmation that Section 107(b) – as opposed to Section 107(a) – is a restatement of Public Law 280. And the Court's holding is in direct conflict with prior orders of this Court that have applied the congressional language in Section 107(b) to prohibit state regulation of gaming on the Pueblo. Further, to the extent the Court believes the phrase "no state regulatory jurisdiction" Congress adopted in Section 107(b) is ambiguous, the Court must apply the Indian Canon of Construction, which it did not do.

**MEMORANDUM IN SUPPORT OF MOTION**

**LEGAL STANDARD**

A motion for reconsideration "may properly be considered either [as] a Rule 59(e) motion to alter or amend judgment or a Rule 60(b) motion for relief from judgment." *Hamilton Plaintiffs v. Williams Plaintiffs*, 147 F.3d 367, 371, n.10 (5th Cir. 1998). "[W]hile Rules 59(e) and 60(b) permit the same relief—a change in the judgment—Rule 60(b) extends the time within which relief can be sought." *Harcon Barge Co., Inc. v. D & G Boat Rentals, Inc.*, 784 F.2d 665,

---

[1] Pursuant to Local Rule CV-7(i), undersigned counsel certifies to the Court that counsel for the parties have conferred in a good faith attempt to resolve the matter by agreement, but no agreement could be reached because counsel for the State of Texas does not believe the Order needs to be reconsidered.

1

669 (5th Cir. 1986) (en banc). Under the "guidelines" of Rule 59(e), "[t]o succeed on a . . . motion for reconsideration, a party must clearly establish either a manifest error of law or fact or must present newly discovered evidence." *Anderson v. Cain*, 402 B.R. 752, 754-55 (E.D. Tex. 2009) (internal citations and quotations omitted). Under Rule 60(b), the court may relieve a party from final judgment on the basis of "mistake" or "any other reason justifying relief from the operation of the judgment." Fed. R. Civ. P. 60(b)(1)-(6).

## ARGUMENT

I. **The Court's Order disregards *Ysleta I*'s holding that Section 107(b) of the Restoration Act is a "restatement of Public Law 280" and "not to be construed as a grant of civil or criminal jurisdiction to the State."**

The Fifth Circuit held in *Ysleta I* that Section 107(b) of the Restoration Act "is a restatement of Public Law 280."[2] *Ysleta del Sur Pueblo v. State of Tex.*, 36 F.3d 1325, 1334 (5th Cir. 1994) ("*Ysleta I*"). Public Law 280 grants certain states limited jurisdiction over crimes and civil matters on reservations in those states.[3] COHEN'S HANDBOOK OF FEDERAL INDIAN LAW § 6.04[3][a]-[b], at 537-539 (Nell Jessup Newton ed., 2012). However, "the federal grant of jurisdiction to the states under Public Law 280 excludes significant subject areas, particularly in the regulatory and tax fields." *Id*. at 540. In *Byron v. Itasca Cnty., Minn.*, the Supreme Court held that Public Law 280 never conferred "general state civil regulatory control over Indian reservations." 426 U.S. 373, 384 (1976). "[I]f Congress in enacting [Public Law] 280 had intended to confer upon the States general civil regulatory powers…over reserved Indians, it would have expressly said so." *Id*. at 390. The Supreme Court confirmed this result in

---

[2] Section 107(b) of the Restoration Act states: "No State Regulatory Jurisdiction – Nothing in this section shall be construed as a grant of civil or criminally regulatory jurisdiction to the State of Texas."

[3] Act of Aug. 15, 1953, 67 Stat. 588 (codified as amended at 18 U.S.C. § 1162, 25 U.S.C. § 1321-1326, 28 U.S.C. § 1360, 1360 note).

2

*California v. Cabazon Band of Mission Indians*, 480 U.S. 202 (1987). *Ysleta I* correctly interpreted the holding of *Cabazon*: "while Public Law 280 broadened California's authority with regard to Indian reservations, Congress did not intend to grant it general civil regulatory authority." 36 F.3d 1330. *Ysleta I,* and this Court, also correctly observed that "to determine whether conduct falls within a state's jurisdiction pursuant to [Public Law] 280, the Supreme Court [in *Cabazon*] recognized a distinction between 'criminal/prohibitory laws' and 'civil/regulatory laws.'" Order No. 183 at 8.

*Ysleta I* addressed *Cabazon* in response to the Pueblo's argument that because Congress used the word "prohibited" in Section 107(a), *that section* must be interpreted to incorporate *Cabazon's* "prohibitory/regulatory" distinction.[4] *Id.* Addressing that argument, the Fifth Circuit distinguished Section 107(a) from Section 107(b) of the Restoration Act:

> The Tribe points to two items in the Restoration Act's legislative history that it believes indicate Congress incorporated *Cabazon Band* into § 107(a) of the Act. First, Congress noted in its report that § 107(b) "is a restatement of the law as provided in [Public Law 280]." *Id.* at 10. The reference to Public Law 280, the statute at issue in *Cabazon Band,* presumably is the hook on which the Tribe hangs this argument. The Tribe's argument, however, misses the mark, because § 107(b), as opposed to § 107(a), states only that the Restoration Act is not to be construed as a grant of civil or criminal regulatory jurisdiction to the State. In that sense *only,* § 107(b) is a restatement of Public Law 280. But it is § 107(a) that determines whether Texas "prohibits" certain gaming activities, and § 107(a) is *not* a restatement of Public Law 280.

*Ysleta I*, 36 F.3d at 1334 (emphasis in original). This is the only discussion of Section 107(b) in *Ysleta I,* and it confirms the Fifth Circuit's conclusion that "[Section] 107(a) <u>is not</u> a restatement of Public Law 280," but that "[Section] 107(b) <u>is</u> a restatement of Public Law 280.'" *Id.* (emphasis added). The Fifth Circuit then also held that "the Restoration Act is not to be

---

[4] Section 107(a) provides, in part: "In General – All gaming activities which are prohibited by the laws of the State of Texas are hereby prohibited on the reservation and on lands of the tribe."

3

construed as a grant of civil or criminal regulatory jurisdiction to the State." *Id.*

Unlike the Fifth Circuit in *Ysleta I*, this Court's Order No. 183 disregards Section 107(b) as "a restatement of Public Law 280" and does not apply required Public Law 280 analysis:

> Though an interpretation of subsection (b) that incorporated *Cabazon Band* would distinguish between laws that prohibit conduct and those that permit but merely regulate conduct, the Fifth Circuit rejected this view.

Order No. 183 at 20. But the Fifth Circuit did not reject this view – it embraced it: it held that Section "107(b) is a restatement of Public Law 280" and that "the Restoration Act is not to be construed as a grant of civil or criminal regulatory jurisdiction to the State." 36 F.3d at 1334.

Interpretation of Section 107(b) therefore requires application of Public Law 280 precedent – including *Cabazon*. And as this Court confirmed, incorporating *Cabazon* in its interpretation of Section 107(b) requires the Court to "distinguish between laws that prohibit conduct and those that permit *but merely regulate* conduct." Order No. 183 at 20 (emphasis added). But this required analysis is absent from Order No. 183, resulting in a manifest error of law by holding that Texas may enforce state regulations through the federal courts:

> [A]lthough subsection (b) provides that Texas does not have "regulatory jurisdiction," subsection (b) does not provide that Texas's regulations are thus unenforceable against the Tribe in federal court. Importantly, the Tribe's formulation of subsection (b) does not reflect the Fifth Circuit's interpretation of the statute. Pursuant to *Ysleta I*, the Tribe is subject to Texas's regulations, and Texas may properly enforce its regulations in federal court.

*Id*.

The Fifth Circuit in *Ysleta I* never examined the language of Section 107(b), and never held that Section 107(b) allows Texas to exercise regulatory jurisdiction over Ysleta del Sur Pueblo – through the federal courts or otherwise. In fact, the Fifth Circuit reached the opposite conclusion when it distinguished Section 107(a) from Section 107(b), holding that Section "107(b) is a restatement of Public Law 280" and "that the Restoration Act is not to be construed

4

as a grant of civil or criminal regulatory jurisdiction to the State." 36 F.3d at 1334.

Every order entered by this Court – until Order No. 183 – has adhered to the unambiguous language of Section 107(b) and the Fifth Circuit's holding regarding Section 107(b) in *Ysleta I*. Those prior orders declined to construe Section 107(b) as granting regulatory jurisdiction to the State of Texas in any manner, including regulatory enforcement through the federal courts. For example, Judge Eisele, addressing charitable bingo, concluded:

> The Court notes that while the Restoration Act provides that the Tribe is subject to Texas gaming law, the Act does not provide Texas any regulatory jurisdiction over the Tribe:
> . . .
> <u>(b) Nothing in this section shall be construed as a grant of civil or criminal regulatory jurisdiction to the State of Texas.</u>

Order Modifying Sept. 27, 2001 Inj. at 15, *State of Tex. v. Ysleta del Sur Pueblo*, No. 3:99-CV-320 (W.D. Tex. 2016) ("*Ysleta II*"), ECF No. 165 (quoting Sections 107(a) and (b)) (emphasis in original). In that same order, Judge Eisele also specifically:

> recognize[d] that Section 107(b) of the Restoration Act provides that Texas does not hold regulatory jurisdiction over the Tribe.
>
> Though a close question, the Court concludes that, pursuant to its September 27, 2001, Memorandum Opinion, the Defendants have not shown that the Tribe is "otherwise qualified" to participate in charitable bingo activities under Texas law. <u>While the Tribe is not subject to the regulatory jurisdiction of the State, including the [Texas Lottery] Commission,</u> it is clear that the Tribe is subject to Texas <u>law</u> on all gaming matters, including participation in charitable bingo activities.

*Id.* at 14-15. Similarly, Judge Hudspeth confirmed that the Pueblo is "not subject to the regulatory jurisdiction of any State agency, including the Texas Lottery Commission." Order Regarding Defs.' Third Mot. for Clarification at 6, *Ysleta II*, ECF No. 282. And Judge Cardone, citing Section 107(b), also confirmed that "the [Restoration] Act specifically provides that nothing in the section addressing gaming activity 'shall be construed as a grant of civil or criminal regulatory jurisdiction to the State of Texas.'" Order at 38, *Ysleta II*, ECF No. 608.

5

Judge Cardone then specifically clarified:

> The Fifth Circuit has indicated that this provision "is a restatement of Public Law 280." *Ysleta*, 36 F.3d at 1334. The "grant of jurisdiction to states under Public Law 280 excludes significant subject areas, particularly in the regulatory and tax fields." Cohen's Handbook § 6.04(3)(b)(ii).

*Id.* Even within the context of the present case this Court has confirmed that:

> It is true, as Defendants argue, that state regulatory bodies may not exercise jurisdiction over the Pueblo pursuant to the Act. This does, in a sense, 'exempt' the Pueblo from certain responsibilities imposed by those regulatory authorities. … The Act contemplates a gaming prohibition just as strict as that provided by state law, just without the regulatory regime that applies to all other entities within the state's jurisdiction.

Order Den. Mot. to Dismiss at 11-12, Mar. 28, 2018, ECF No. 76. The Court has also stated:

> Adding to <u>the exceptional nature of this statute is its prohibition on the State's exercise of regulatory authority over Defendants</u>, which would normally help dictate what does and does not constitute unlawful gaming pursuant to state law.

Order Regarding Magistrate's R. & R. and Pl.'s Appl. for Prelim. Inj. at 37, Mar. 29, 2018, ECF No. 77 (emphasis added).

Applying this analysis, this Court in earlier orders rejected the conclusion reached in Order No. 183: that the Restoration Act requires the Pueblo to obtain a state license. In 2002, Judge Eisele attempted to address the ongoing conflict by judicially ordering the Pueblo "to procure a license to conduct bingo games from the [Texas Lottery] Commission." Order No. 183 at 12. The Pueblo worked to do so as ordered by the Court, with little success. In 2009 Judge Hudspeth eliminated that judicial requirement, stating: "[a]lthough it appeared to be a reasonable compromise, this noble experiment has not worked in practice" and holding "it is time for a new approach." Order Regarding Defs.' Third Mot. for Clarification at 6, *Ysleta II*, ECF No. 282. Instead of the judicially imposed license requirement, Judge Hudspeth directed "the Defendants to petition the Court directly" and gave the State of Texas "the opportunity to

respond to the Defendants' petition." *Id.* at 7. In 2016, Judge Cardone correctly held that this "petition" process "improperly contorted this Court's role of arbiter into that of a regulatory body overseeing a segment of the affairs of a sovereign tribal nation." She stated:

> Instead, the Restoration Act provides a mechanism for addressing violations of its provisions. That mechanism requires Texas to bring suit in this Court to challenge alleged violations of the Act, and allows this Court to enter an injunction, if warranted.

Order at 2, *Ysleta II*, ECF No. 608.

Order No. 183 returns the federal courts to the "quasi-regulatory body" function which Judge Cardone rejected. Should the Court not reconsider Order No. 183, it will be forced in the future to resolve every regulatory dispute between the State and the Pueblo concerning gaming activities on the Pueblo. The administrative detail those regulatory determinations will require is significant, as shown in the range of regulatory issues presented in the past to the Texas Lottery Commission, including: (1) whether a concrete foundation for a new bingo hall poured next to an existing foundation is required to be considered a common foundation [Greenfield Bingo Services, No. 2010-0819-0008 (Texas Lottery Comm'n Sept. 22, 2010)]; (2) the propriety of a bingo game in which one ball draw can be used to award multiple prizes of $50.00 or less using multiple bingo cards [Kris Keller, No. 2017-0306-0002 (Texas Lottery Comm'n May 1, 2017)]; and (3) whether acceptance of a credit card as payment for bingo products is permitted if the credit card transaction is funded by a credit card processing company within two business days [Littlefield Corporation, No. 2017-0816-0004 (Texas Lottery Comm'n Oct. 13, 2017)]. The Court has previously recognized – and rejected – an approach that forces it to act as a "quasi-regulatory body." This Court should reconsider its decision to abandon that holding.

And as to regulatory enforcement at the federal level, the Court in previous orders – including in this pending action – has held that the Restoration Act grants the Secretary of

7

Interior the sole power to adopt regulations regarding gaming by the Pueblo: "the Restoration Act charges the 'Secretary of the Interior or his designated representative' with 'promulgat[ing] such regulations as may be necessary to carry out the provisions of [the] Act." Order at 13, 19, *Ysleta II*, ECF No. 608. The Court went on to confirm that:

> DOI is charged with, among other responsibilities, administering the Restoration Act. *See* Restoration Act, Pub. L. No. 100-89, § 2, 101 Stat. 666 ("The Secretary of the Interior or his designated representative may promulgate such regulations as may be necessary to carry out the provisions of this Act.").

*Id.* The Court in the present action reached that same conclusion, after first confirming that the State "may not exercise [regulatory] jurisdiction over the Pueblo pursuant to the Act":

> Instead, the Act provides that "[t]he Secretary of the Interior or his designated representative may promulgate such regulations as may be necessary to carry out the provisions of this Act." Restoration Act § 2.

Order Den. Mot. to Dismiss at 12, n.2, ECF No. 76. Even if this Court believes that Texas regulations are "surrogate federal law" under *Ysleta I*, the Court is prohibited under Section 107(b) from granting the State jurisdiction to enforce state regulations through the federal courts. That regulatory enforcement can only be sought by the federal government.

**II.** **Order No. 183 disregards controlling law that requires application of the Indian Canon of Construction if Congress enacts an ambiguous statutory provision.**

Both the United States Supreme Court and the Fifth Circuit Court of Appeals consistently have confirmed that "the Indian canon of construction requires statutes to be construed liberally in favor of the Indians and ambiguous provisions interpreted to their benefit." *Banks v. United States Parole Comm'n*, 399 Fed. Appx. 19, 20, 2010 WL 4269258, at *1 (5th Cir. 2010) (emphasis added). *See Montana v. Blackfeet Tribe,* 471 U.S. 759, 766 (1985). *See also McClanahan v. Arizona State Tax Comm'n,* 411 U.S. 164, 174 (1973). Specific to this motion, "[t]he Supreme Court in interpreting Public Law 280 has stated that 'statutes passed for the

8

benefit of dependent Indian tribes ... are to be liberally construed, doubtful expressions being resolved in favor of the Indians.'" *Seminole Tribe of Fla. v. Butterworth*, 658 F.2d 310, 316 (5th Cir. 1981) (quoting *Bryan*, 426 U.S. at 392).

As set forth above, Section 107(b)'s Public Law 280 text is unambiguous: no state regulatory jurisdiction. Yet on page 20 of Order No. 183, the Court states: "[a]dmittedly, the Restoration Act does not clearly define what 'regulatory jurisdiction' means." Because the Court found "regulatory jurisdiction" to be "not clearly define[d]," the Court is required to apply the Indian Canon of Construction and to liberally resolve the perceived ambiguity "in favor of the Indians." The Court's failure to do so is itself manifest error requiring reconsideration.

### III. The Pueblo Defendants' position comports with that advanced by the State following *Ysleta I*.

At core, the dispute between the Pueblo Defendants and the State stems from the Fifth Circuit's flawed decision in *Ysleta I*. As the State itself recognized in the certiorari proceedings following that opinion, the *Ysleta I* court improperly "decided an Eleventh Amendment question as to the Restoration Act which was not presented by the litigation while avoiding deciding the same question as it applies to IGRA, the act pursuant to which the State was sued," a result that "[left] unanswered serious questions impinging on the sovereignty of the State and the Tribe and the federal government's plenary power in the area of Indian Commerce." State's Conditional Cross-Petition for Writ of Certiorari, *Texas v. Ysleta del Sur Pueblo*, No. 94-1310, 1995 WL 17048828, at *6 (U.S. filed Jan. 30, 1995).[5] The Pueblo Defendants repeatedly have argued that *Ysleta I* was wrongly decided and they will not rehash those arguments here; they acknowledge that only the Fifth Circuit sitting *en banc* can undo the damage that the *Ysleta I* opinion has

---

[5] Indian Gaming Regulatory Act, 25 U.S.C.A. §§ 2701-2721 (West, Westlaw through Pub. L. No. 116-5)

9

wrought.

It is notable, though, that the State previously has argued the same position advanced by the Pueblo Defendants in this pending action with respect to the applicability of Texas laws and regulations to gaming on the Pueblo's reservation, specifically as to bingo. In the State's Conditional Cross-Petition for Certiorari in *Ysleta I*, the State—in addition to essentially conceding that *Ysleta I* was wrongly decided—acknowledged that Texas bingo laws "would be difficult to apply to an Indian tribe." *Id.* at *7-8. The State at that time argued that IGRA provided the solution to this difficulty because it allows an Indian tribe to offer bingo as "Class II" gaming "under the supervision of the National Indian Gaming Commission" if the state in which the tribe is located "permits such gaming for any purpose by any person, organization or entity," *Id.* at 8, which Texas did—and does. For that reason, among others, Texas argued that the Supreme Court should reconsider *Ysleta I* so that IGRA and the Restoration Act could be "reconciled" and "harmonized" consistent with the careful sovereignty-balancing regime Congress crafted in IGRA. *See id.* at *7-9. "[W]ithout the framework provided by IGRA," the State warned in 1995, "*it would not be possible to regulate those activities* [conducted by the Pueblo] *since the state has no regulatory, civil or criminal jurisdiction over gaming on Tribal lands.*" *Id.* at *8 (emphasis added). Thus, the Pueblo Defendants here ask the Court to reconsider its Order to make it consistent not only with the Court's prior understanding of the Restoration Act, but with the State's original position on the issue as well: that the State cannot enforce its regulations to the bingo offered on the Pueblo's reservation.

## **CONCLUSION**

The Pueblo Defendants respectfully request that the Court grant this motion and reconsider its February 14, 2019 Memorandum Opinion and Order.

Dated: March 1, 2019				Respectfully Submitted,

				*/s/ Randolph H. Barnhouse*
				Randolph H. Barnhouse
				Michelle T. Miano
				BARNHOUSE KEEGAN SOLIMON & WEST LLP
				7424 4th Street NW
				Los Ranchos de Albuquerque, NM 87107
				(505) 842-6123 (telephone)
				(505) 842-6124 (facsimile)
				dbarnhouse@indiancountrylaw.com
				mmiano@indiancountrylaw.com

				KEMP SMITH LLP
				Richard Bonner
				State Bar No. 02608500
				Joseph Daniel Austin
				State Bar No. 24101470
				P.O. Box 2800
				El Paso, TX 79999
				(915) 553-4424 (telephone)
				(915) 546-5360 (facsimile)
				Richard.Bonner@kempsmith.com
				Joseph.Austin@kempsmith.com

				*Attorneys for Pueblo Defendants/Counter-Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 1, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to counsel of record.

*/s/ Randolph H. Barnhouse*
Randolph H. Barnhouse