## IN THE UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF TEXAS
### EL PASO DIVISION

| | | |
|---|---|---|
| **STATE OF TEXAS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **No: 03:17-CV-00179-PRM** |
| **v.** | § | |
| | § | |
| **YSLETA DEL SUR PUEBLO,** | § | |
| **THE TRIBAL COUNCIL, THE** | § | |
| **TRIBAL GOVERNOR MICHAEL** | § | |
| **SILVAS or his SUCCESSOR,** | § | |
| | § | |
| **Defendants.** | § | |
| _____ | § | |
| | § | |
| **YSLETA DEL SUR PUEBLO,** | § | |
| **THE TRIBAL COUNCIL, THE** | § | |
| **TRIBAL GOVERNOR MICHAEL** | § | |
| **SILVAS or his SUCCESSOR,** | § | |
| | § | |
| **Counter-Plaintiffs,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **KEN PAXTON, in his OFFICIAL** | § | |
| **CAPACITY AS THE TEXAS** | § | |
| **ATTORNEY GENERAL,** | § | |
| | § | |
| **Counter-Defendant.** | § | |
| | § | |

### PUEBLO DEFENDANTS' MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO STAY JUDGMENT AND INJUNCTION PENDING APPEAL
**\*Hearing Requested\***

COME NOW Defendants and Counter-Plaintiffs Ysleta del Sur Pueblo, The Tribal Council, and The Tribal Governor or his Successor (collectively, the "Pueblo Defendants" or "Pueblo") to file their Motion and Memorandum in Support of Motion to Stay Judgment and Injunction Pending Appeal, and respectfully show the Court as follows:

## MOTION

The Pueblo Defendants seek to preserve the status quo—which would directly benefit the lives of thousands of its members—while they appeal the Court's Memorandum and Order (ECF No. 183; the "Order") and entry of any accompanying injunction to the Fifth Circuit. This very Court has acknowledged that this dispute involves an "exceptional" issue, in which the "Defendants . . . exist in a twilight zone of state, federal, and sovereign authority where the outer limit of their conduct is difficult to assess with precision."[1] Previous judges have struggled with application of the Restoration Act for decades, and they have been joined by this Court in the present case, as evidenced by the Magistrate's contrary interpretation of the Act's applicable provisions.

It is reasonable to conclude that the Fifth Circuit will decide the "outer limit" of the Pueblo Defendants' conduct differently than has this Court in this present action. While the Fifth Circuit recently affirmed the Eastern District's ruling against the Alabama-Coushatta Tribe of Texas,[2] that opinion addressed an entirely different question and set of facts: whether the National Indian Gaming Commission's decision that the Indian Gaming Regulatory Act applies to that tribe's gaming operations should be given deference under *Chevron* and its progeny.[3] The appeal in this case will address a fundamentally different question: the scope of the State's regulatory authority

---

[1] Order Regarding Magistrate's R. & R. and Pl.'s App. for Preliminary Inj. at 37, ECF No. 77.

[2] *Texas v. Alabama-Coushatta Tribe of Texas*, --- F.3d ---, 2019 WL 1199564 (5th Cir. Mar. 14, 2019).

[3] Additionally, the Fifth Circuit's opinion is called into question by the United States Supreme Court's March 19, 2019 opinion in *Washington State Dep't of Licensing v. Cougar Den, Inc.*, which held that "[w]hen dealing with a tribal treaty, a court ***must*** 'give effect to the terms as the Indians themselves would have understood them.'" --- U.S. ---, 2019 WL 1245535, at *2 (U.S. Mar. 19, 2019) (emphasis added).

and this Court's jurisdiction under the plain language of the Restoration Act.[4] But the parties and

Court will not know the Fifth Circuit's decision for many months.

Preserving the status quo during the appeal is particularly critical in this case given the

undisputed destructive impact of an injunction on the lives of thousands of people. Absent a stay:

- hundreds of people will lose their source of employment, income, and health insurance;

- the Pueblo will lose funding for critical government welfare programs for its over 4,000 members, including after-school programs, the tribal police department, substance abuse prevention programs, and other public health and safety programs;

- the Pueblo will be forced to delay or terminate the construction of a health clinic to be operated in partnership with the federal government; and

- federal and state programs will be forced to assume the burdens of providing services to people who are now able to provide for themselves.

The State's sovereign immunity precludes recovery for any of this harm. Courts in past and current

Restoration Act disputes have provided such stay relief. The Pueblo have substantial arguments

on serious legal issues that may well be resolved in their favor on appeal, the State will suffer no

harm if an injunction is delayed, and the balance of equities thus heavily favors a stay.

Accordingly, the Pueblo Defendants respectfully move the Court to stay its Order and any

accompanying injunction pending appeal to the Fifth Circuit.

## **LEGAL STANDARD**

Parties and the public can suffer "irreparable injury" from "the premature enforcement of

a determination which may later be found to have been wrong." *Scripps-Howard Radio, Inc. v.*

*FCC*, 316 U.S. 4, 10 (1942). The analysis of whether to issue a stay pending appeal requires

consideration of four factors: "(1) whether the stay applicant has made a strong showing that he is

---

[4] The Pueblo Defendants further highlight the critical issues and arguments they intend to raise on appeal in their Response to Plaintiff's Notice of Authority and Notice of Additional Authority ("Response to Notice of Authority"), which is fully incorporated herein by reference.

likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009). "The first two factors of the traditional standard are the most critical." *Id.*

The Fifth Circuit has cautioned that "the movant need not always show a '***probability***' of success on the merits." *Moore v. Tangipahoa Parish Sch. Bd.*, 507 F. App'x 389, 393 (5th Cir. 2013) (emphasis added) (quoting *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981)). Where, as in this case, "a serious legal question is involved," a party seeking a stay "need only present a ***substantial case on the merits*** . . . and show that the ***balance of the equities*** weighs heavily in favor of granting a stay." *Ruiz*, 650 F.2d at 565 (emphasis added).

## ARGUMENT

I.     **The Pueblo Defendants Satisfy All Necessary Factors for this Court to Grant a Stay of its February 14, 2019 Order Pending Appeal.**

A.     **The Pueblo's Appeal Presents Serious Legal Questions in this Case, and Substantial Arguments on the Merits.**

This appeal will address serious tensions in the law between federal, tribal, and state sovereigns. The core legal issues of this case also lack clear precedent.[5] The Pueblo Defendants have advanced serious arguments on each of these complex issues, which even this Court has agreed with at times. Yet, even if the Court did not agree, the first *Ruiz* factor is satisfied given the substantial arguments advanced.[6] Further, because the Pueblo Defendants have presented at least a prima facie case on the merits, the "substantial argument" standard is met. *See Janvey v. Alguire*,

---

[5] *See Cruson v. Jackson Nat'l Life Ins. Co.*, No. 4:16-CV-00912, 2018 WL 2937471, at *4, n.2 (E.D. Tex. June 12, 2018) ("The Fifth Circuit recognizes that a party presents a substantial case on the merits when there is a lack of precedent to clarify the issues at bar.").
[6] *See Ruiz*, 650 F.2d at 565 ("If a movant were required … to establish that the appeal would probably be successful, the Rule would not require … a prior presentation to the district judge whose order is being appealed. That judge has already decided the merits of the legal issue.").

647 F.3d 585, 596, 599 (5th Cir. 2011).

The Pueblo Defendants have advanced, and will advance on appeal, substantial arguments on the following serious legal issues.

### i. Whether the Restoration Act Prohibits the State from Exercising Regulatory Jurisdiction Over the Ysleta del Sur Pueblo Under the Plain Language of the Act Itself.

The central issue in this case is whether the State may exercise regulatory jurisdiction through the federal courts, or otherwise, over gaming activities on the Ysleta del Sur Pueblo. The plain language of Section 107(b) expressly prohibits the State from exercising such authority. Yet, this Court has applied both the Bingo Enabling Act and the Texas Administrative Code to the gaming activities on the Pueblo, in violation of Section 107(b)'s clear prohibition.

The Court's acknowledgement that the Restoration Act "does not clearly define what … 'regulatory jurisdiction' means" demonstrates just how complex this issue is.[7] *See Southwest Airlines Co. v. Transport Workers Union of America, AFL-CIO, Local 555*, No. 3:16-CV-3536-G, 2018 WL 2317710, at \*2 (N.D. Tex. May 22, 2018). The Court's struggle is apparent when comparing the Magistrate's divergent rulings on this central question in this very case. As further described in the Pueblo Defendants' Response to Notice of Authority, incorporated herein, the Pueblo Defendants' argument on this issue actually comprises previous holdings of the Fifth Circuit and this Court, notwithstanding the Fifth Circuit's ruling in the Alabama-Coushatta case (which addresses an unrelated administrative law issue).

The Pueblo recognizes that the Fifth Circuit stated in *Ysleta I* that the "laws and regulations of the State of Texas" apply to the Tribe's activities,[8] but Defendants respectfully submit that this expansive interpretation of the Restoration Act is contrary to strict canons of statutory

---

[7] Order at 20.
[8] *Ysleta del Sur Pueblo v. State of Texas*, 36 F.3d 1325, 1334 (5th Cir. 1994) ("*Ysleta I*").

interpretation. The plain language of Section 107(b) restricts the State from exercising any "civil or criminal regulatory jurisdiction," and the Supreme Court recognized a clear distinction between "criminal/prohibitory" and "civil/regulatory" laws in *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 221-222 (1987). Contrary to this Court's application of *Ysleta I*, the Restoration Act should be construed to not provide regulatory authority over the Pueblo.

The Pueblo's arguments are therefore "substantial" for purposes of the first *Ruiz* factor.

### ii.    Whether the Bingo Enabling Act Regulates Bingo Activities.

The Fifth Circuit has held that the Bingo Enabling Act "<u>regulates</u> all bingo-related activities, including the types of games played, game frequency and times, and bingo-employee qualifications." *Dep't of Texas, Veterans of Foreign Wars of U.S. v. Texas Lottery Comm'n*, 760 F.3d 427, 437 (5th Cir. 2014) (emphasis added). While it might be reasonable for the Fifth Circuit on appeal to apply this same standard to the ability of the State to exercise regulatory jurisdiction over the Pueblo, that is only reasonable if the State had such regulatory authority in the first place. In fact, based on strict statutory interpretation, it is more reasonable for the Fifth Circuit to hold those portions of the Bingo Enabling Act that are "regulatory" do not apply to the Pueblo at all.

### iii.    Whether Section 107(c) Affirmatively Constitutes an Independent and Specific Source of Federal Injunctive Power to the State.

After vigorous analysis, Magistrate Judge Schydlower concluded that Section 107(c) of the Restoration Act does not affirmatively constitute an independent and specific source of federal injunctive power to the State.[9] Although the Court ultimately declined to adopt this position, it noted Magistrate Judge Schydlower's conclusion was reasonable.[10] The Fifth Circuit may agree

---

[9] R. & R. of the Magistrate Judge, Jan. 29, 2018, ECF No. 64.

[10] Order Regarding Magistrate's R. & R. at 18, Mar. 28, 2018, ECF No. 77. ("While the Court agrees that the language in § 107(c) could be reasonably interpreted in the manner the Magistrate suggests, the Court disagrees that this is the only reasonable interpretation.)

with Magistrate Judge Schydlower's "reasonable" interpretation.

> iv.    Whether an "Activity Exempted, Authorized, or Otherwise Lawful Activity Regulated by a Federal Law" Constitutes a "Common Nuisance" under Section 125.0015(e) of the Texas Civil Practice and Remedies Code.

The Texas Legislature recently added Subsection (e) to Section 125.0015 of the Texas Civil Practice and Remedies Code, a section which has never been considered other than by this Court.[11] This Court disagreed that Subsection (e) applies to gaming activities under the Restoration Act as a matter of first impression, but simultaneously acknowledged that the Restoration Act: (1) assigns authority to the Secretary of Interior—a federal post—to promulgate applicable regulations under the Act, and (2) is not to be construed as a grant of regulatory jurisdiction to the State.[12] In so holding, the Court maintains that "the text of the nuisance statute is frustratingly vague."[13] The recent amendment of Subsection (e) to the State's common nuisance statue—for which there is no precedent—presents a "serious" legal question for which the Pueblo Defendants have presented "substantial" arguments. *See Cruson*, 2018 WL 2937471, at *4, n.2.

> B.    The Balance of the Equities Heavily Favors the Pueblo.

> i.    The Pueblo Defendants and Others Will Suffer Irreparable Injury If a Stay Is Denied.

"When evaluating claimed irreparable harm for a motion to stay proceedings, the Fifth Circuit applies criteria that is very similar to that it uses to assess irreparable harm in a motion for preliminary injunction." *Cruson*, 2018 WL 2937471, at *4.

---

[11] Section 125.0015 is the sole authority by which the Court has held the State has capacity to sue, and Subsection (e) modified Section 125.0015 to "not apply to an activity exempted, authorized, or otherwise lawful activity regulated by federal law." TEX. CIV. PRAC. & REM. CODE § 125.0015(e).
[12] *Id.* at 12, n.2.
[13] *Id.* at 10.

The Order acknowledged that "an injunction will have a ***substantial impact*** on the Pueblo's community."[14] This is not a just a "substantial impact"; it is an irreparable impact that is already reverberating throughout the Pueblo. The Pueblo and the entire El Paso region face the same "immediate, immense, and irreparable" consequences from the Court's Order that they faced after the State moved for a preliminary injunction.[15] Furthermore, "[w]here, as here, enforcement of a statute or regulation threatens to infringe upon a tribe's right of sovereignty, federal courts have found the irreparable harm requirement satisfied."[16]

The Pueblo, a sovereign Indian nation, has a population of approximately 4,320 members.[17] In 2016 at last measure, 47% of Pueblo members live below federal poverty levels; the medium personal income is $16,722 and the medium household income is $29,122.[18] Without question, the Pueblo depend on funds allocated from the current bingo game revenue to support the welfare of its members. Revenue from bingo at the Pueblo funds supports:

- child welfare services, crisis intervention, daycare services, a food pantry, and medical services provided by the Ysleta del Sur Pueblo Department of Behavioral Health;

- child and adult psychiatric care, therapy, marriage counseling, anger management classes, parenting classes, and a 24-hour crisis hotline provided by the Mental Health Division;

- the prevention, intervention, rehabilitation, residential treatment, and support groups provided by the Alcohol and Substance Abuse Division;

- counseling for tribal students, student transportation, an early learning center, a tribal Pre-K program, youth and teen mentoring services, academic scholarships and financial assistance provided by the Department of Tribal Empowerment; and

---

[14] Order at 40, ECF No. 183 (emphasis added).
[15] Order Regarding Magistrate's R. & R. at 40, Mar. 29, 2018, ECF No. 77.
[16] *Seneca Nation of Indians v. Paterson*, No. 10–CV–687A, 2010 WL 4027795, at *2 (W.D.N.Y. Oct. 14, 2010).
[17] Declaration of Governor Michael Silvas ("Silvas Decl."), attached hereto as Ex. 1, at ¶ 3.
[18] *Id.* at ¶ 4.

- the tribal police department that employs eleven police officers and an emergency management division, which includes 24-hour emergency services provided by the Department of Public Safety.[19]

Funding for these programs is either now uncertain or in the process of being terminated due to the Court Order. Although the Pueblo may fund some of its social programs through other means, revenue from bingo activities is overwhelmingly the primary funding source for these services.[20]

In addition, Speaking Rock Entertainment Center ("Speaking Rock") employs over 700 tribal and non-tribal people who will also be irreparably harmed.[21] Hundreds of Speaking Rock's employees will lose their jobs and benefits as a result of the Court's Order.[22] This harm does not end at the Pueblo's borders. In 2017, the aggregate economic impact of operations at Speaking Rock was $161.5 million, with $91.7 million in value-added, and 1,156 total jobs with labor income of approximately $39.3 million.[23] Such a large loss of jobs at one time will strain social services, as many former Speaking Rock employees will be forced to apply for food, healthcare, and housing assistance.

In addition, the State's sovereign immunity forecloses remedial relief if the Pueblo is wrongfully enjoined from operating Speaking Rock during appeal, establishing irreparable harm as a matter of law.

### C. No One Will Be "Substantially Harmed" by a Stay.

The State, on the other hand, will suffer no real harm from a stay pending appeal, let alone the "substantial harm" it must demonstrate to meet the *Ruiz* standard. The State has received no complaints about the bingo activities on the Pueblo.[24] Moreover, this Court has held:

---

[19] *Id.* at ¶¶ 6-10.
[20] *Id.* at ¶¶ 6, 14.
[21] Declaration of Karl Maahs ("Maah Decl."), attached as Ex. 2, at ¶ 3.
[22] *Id.* at ¶ 6.
[23] *Id.* at ¶¶ 7-8.
[24] *See* Pueblo Defs.'s Resp. to Texas's Mot. for Summary Judgment at 18 n.21, ECF No. 154.

> [T]he State does not suggest that the community considers Speaking Rock to be a nuisance of any sort. … To the contrary, the [Pueblo Defendants] has submitted evidence demonstrating that the community supports Speaking Rock and believes that Speaking Rock is a valuable community asset.[25]

Speaking Rock's continued operation of bingo activities causes no direct financial injury to the State. In fact, a stay will have the opposite effect by enabling those who provide for themselves through the current bingo gaming to continue to do so without straining federal and state resources.

The State no doubt plans to argue that it suffers harm whenever it is enjoined from enforcing its laws. The State tried to bring a similar argument in *State of Tex. v. Alabama Coushatta Tribe of Tex.*, which the district court rejected.[26] The State's theoretical, and at most *de minimis*, injury—present anytime a stay on appeal affects the application of a state law—cannot carry the State's burden here. "If it [did], then the rule requiring 'balance' of 'competing claims of injury' would be eviscerated." *Independent Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly*, 572 F.3d 644, 658 (9th Cir. 2009) (citation omitted), *vacated and remanded on other grounds sub nom.*

Moreover, the central issue to be litigated on appeal is whether State *regulation* or federal *law* prohibiting that very state *regulation* governs gaming at the Pueblo—in other words, which of the requirements of two sovereigns controls. If the Fifth Circuit determines that Congress's statutory provision requiring "no regulatory jurisdiction" means just what it says, then the State can have no interest in seeing its regulations applied to the Pueblo's bingo operations.

### D.  A Stay Pending Appeal Greatly Serves the Public Interest.

The economic consequences of discontinuing the current bingo operations on the Pueblo—even if only temporarily—are severe and will be felt by tribal members, employees, and the

---

[25] Order at 39 n.12, ECF No. 183.

[26] Order Granting Mot. to Stay Pending Appeal, *State of Tex. v. Alabama Coushatta Tribe of Tex.*, No. 9:01-CV-299 (E.D. Tex. Feb. 28, 2018), ECF No. 144.

surrounding community, whereas the State will suffer no injury from its continued operation.[27]

Like a preliminary injunction, a stay pending appeal "does not permanently impose on the state's"

sovereignty. *See Winnebago Tribe of Nebraska v. Stovall*, 216 F. Supp. 2d 1226, 1233 (D. Kan.

2002), aff'd, 341 F.3d 1202 (10th Cir. 2003). The disposition of the Pueblo's appeal, however, has

critical implications for its "self-government, self-sufficiency, and self-determination." *Id.* at 1233.

## II.     The Fifth Circuit and This Court Have Confirmed that These Factors Support a Stay in Restoration Act Litigation.

The Fifth Circuit and this Court have previously confirmed that a stay pending appeal of

issues under the Restoration Act are warranted.[28] The district court in *State of Tex. v. Alabama*

*Coushatta Tribe of Tex.* recently entered a stay during an appeal of related bingo activities.[29] Such

recognition by the courts further support a stay in the present matter.[30]

## CONCLUSION

The Pueblo Defendants have shown, and this Court has recognized, that the issues the

Pueblo Defendants intend to raise on appeal have substantial merit. Further, the balance of the

equities heavily weigh in favor of the Pueblo Defendants. The Pueblo Defendants therefore

respectfully request that the Court stay its Order and entry of any injunction in this case pending

final disposition of the Pueblo Defendants' appeal.

---

[27] *1020 Elec. Gambling Machines*, 38 F. Supp. 2d at 1225.

[28] *See* Order Staying Proceeding Pending Appeal, *State of Tex. v. Ysleta del Sur Pueblo*, No. EP-99-CV-320 (2016), ECF No. 31; Order Granting Appellants' Mot. for Stay Pending Appeal, *State of Tex. v. Ysleta del Sur Pueblo*, No. 10-5112 (5th Cir. 2001).

[29] *See* Order Granting Mot. to Stay Pending Appeal, *State of Tex. v. Alabama Coushatta Tribe of Tex.*, No. 9:01-CV-299 (E.D. Tex. Feb. 28, 2018), ECF No. 144.

[30] At a minimum the Court should follow the need for a transition period for compliance as it has also done previously. *See e.g.* Order Granting Texas' Fifth Amended Mot. for Contempt, *State of Tex. v. Ysleta del Sur Pueblo*, No. EP-99-CV-320 (2016), ECF No. 510; Order, *State of Tex. v. Ysleta del Sur Pueblo*, No. EP-99-CV-320 (2016), ECF No. 608.

Dated March 22, 2019.                    Respectfully submitted,

                                         */s/ Brant. C. Martin*
                                         Brant C. Martin
                                           State Bar No. 24002529
                                         Joseph R. Callister
                                           State Bar No. 24059054
                                         Wick Phillips Gould & Martin LLP
                                         Throckmorton Street #1500
                                         Fort Worth, Texas 76102
                                         Telephone: (817) 332-7788
                                         Fax: (214) 692-6255
                                         brant.martin@wickphillips.com
                                         joseph.callister@wickphillips.com

                    ***Attorneys for Pueblo Defendants/Counter-Plaintiffs***


                           **<u>HEARING REQUESTED</u>**

        Given the substantial impact that an injunction would have on the Tribe and surrounding

El Paso community, the Pueblo Defendants request that the Court schedule a hearing and entertain

oral argument on the issues set forth in this stay motion.


                                         */s/ Brant. C. Martin*
                                         Brant C. Martin

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(i), undersigned counsel certifies to the Court that counsel for the parties have conferred in a good faith attempt to resolve the matter by agreement, but no agreement could be reached because counsel for the State of Texas does not believe a stay is warranted.

*/s/ Brant. C. Martin*
Brant C. Martin

## CERTIFICATE OF SERVICE

I hereby certify that on March 22, 2019, I caused a true and correct copy of the foregoing to be served on all counsel of record by email through the Court's CM/ECF system.

*/s/ Brant. C. Martin*
Brant C. Martin