IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| STATE OF TEXAS, | § § § | |
| Plaintiff, | § § | No: 03:17-CV-00179-PRM |
| v. | § § | |
| YSLETA DEL SUR PUEBLO, THE TRIBAL COUNCIL, THE TRIBAL GOVERNOR MICHAEL SILVAS or his SUCCESSOR, | § § § § § | |
| Defendants. | § § § | |
| YSLETA DEL SUR PUEBLO, THE TRIBAL COUNCIL, THE TRIBAL GOVERNOR MICHAEL SILVAS or his SUCCESSOR, | § § § § § | |
| Counter-Plaintiffs, | § § | |
| v. | § § | |
| KEN PAXTON, in his OFFICIAL CAPACITY AS THE TEXAS ATTORNEY GENERAL, | § § § § | |
| Counter-Defendant. | § § | |

**PUEBLO DEFENDANTS' RESPONSE TO PLAINTIFF'S NOTICE OF AUTHORITY
AND NOTICE OF ADDITIONAL AUTHORITY**
*Hearing Requested*

As the State noted in its Notice of Authority (ECF No. 196), the Fifth Circuit has issued an opinion in *Texas v. Alabama-Coushatta Tribe of Texas*, --- F.3d ---, 2019 WL 1199564 (5th Cir. Mar. 14, 2019). The Pueblo Defendants challenge the State's premise that this opinion demands denial of the Pueblo Defendants' Motion for Reconsideration (ECF No. 187). Not only does the recent opinion not address crucial issues raised in the Motion for Reconsideration, it highlights a judicial mistake that has adversely impacted the Pueblo for decades: *Ysleta I* was wrongly decided. It is clear this district court is bound by the precedent of the Fifth Circuit, and the Fifth Circuit, in turn, is bound by its own precedent. However, the language from *Ysleta I* stating that the Pueblo's activities are subject to the "laws and regulations" of the State of Texas runs afoul of basic statutory interpretation canons.[1] Specifically, *Ysleta I* reads language into the Restoration Act that was intentionally omitted. It is time for the Fifth Circuit to correct this decades-long mistake that continues to negatively impact the Pueblo. The Pueblo Defendants request a hearing to address these issues with the court.

I. **The Fifth Circuit's March 14 Opinion Provides Additional Cause to Reconsider this Court's Orders.**

In an opinion dated March 14, 2019 (the "March 14 Opinion"), the Fifth Circuit affirmed the Eastern District of Texas's denial of a motion for relief from judgment filed by the Alabama-Coushatta Tribe (the "Alabama-Coushatta"). The Fifth Circuit focuses the March 14 Opinion on rejecting the request from the Alabama-Coushatta that the court give deference to the National Indian Gaming Commission, and impose the regulatory scheme developed under the Indian Gaming Regulatory Act. The March 14 Opinion does not address the crux of the matter before ***this*** Court: the scope of the State's regulatory authority under the plain language of the Restoration

---

[1] *Ysleta del Sur Pueblo v. State of Tex.*, 36 F.3d 1325, 1333 (5th Cir. 1994) (*Ysleta I*).

Act. But the March 14 Opinion does reflect a disappointing trend that has characterized this dispute since the flawed ruling in *Ysleta I*: a refusal to defer to the understanding of Indian tribes in matters concerning those tribes.

In the State's Notice of Authority, the State quotes the March 14 Opinion to show that the Fifth Circuit "'reaffirm[ed] that the Restoration Act and the Texas law it invokes—and not [the Indian Gaming Regulatory Act]—govern the permissibility of gaming operations' on the lands of Restoration Act tribes." Indeed, the March 14 Opinion expands on bad precedent developed by the court in *Ysleta I*, stating, "The Restoration Act's final section ***regulates gaming*** on the [Alabama-Coushatta] reservation and lands."[2] This illustrates the untenable position the Pueblo Defendants have been placed in since *Ysleta I*, as the courts compound a misreading of the Restoration Act, and provide license to the State to take contradictory positions based on shifting judicial standards.

In *Ysleta II*, the Court opined that the Pueblo sought to be treated differently from other tribes.[3] Citing to the State's position at the time, the Court in *Ysleta II* quoted:

> The tribe's interpretation of "prohibited" is not in keeping with these strict limitations, oversight, and criminalization in the field of Indian gaming. It defies common sense to believe that this particular tribe may operate with no controls or limitations, while other tribes are governed by the limitations and procedures of the IGRA and the regulations of its implementing agency, the National Indian Gaming Commission.

In the instant litigation before this Court, the Pueblo Defendants have specifically requested to be treated the same as other tribes, to be governed by the procedures and regulations of IGRA.[4]

---

[2] Emphasis added.

[3] *Texas v. del Sur Pueblo* (*Ysleta II*), 220 F. Supp. 2d 668, 686, n.10 (W.D. Tex. 2001), modified (May 17, 2002), *aff'd*, 31 Fed. Appx. 835 (5th Cir. 2002), *and aff'd sub nom. State of Texas v. Pueblo*, 69 Fed. Appx. 659 (5th Cir. 2003), *and order clarified sub nom. Texas v. Ysleta Del Sur Pueblo*, EP-99-CA-320-H, 2009 WL 10679419 (W.D. Tex. Aug. 4, 2009) (stating "The Tribe simply wants to be treated differently from others.")

[4] *See* Motion for Reconsideration at 9-10.

The State, presumably, would have championed that position in 2001, but now insists that being treated like "other tribes" is not what the Pueblo Defendants deserve. Rather, the Fifth Circuit would engraft regulatory authority into the Restoration Act, creating an entirely separate scheme for the Pueblo Defendants and the Alabama-Coushatta.

As this Court has acknowledged, the Pueblo Defendants "exist in a twilight zone of state, federal, and sovereign authority where the outer limit of their conduct is difficult to assess with precision."[5] This twilight zone is made only more surreal when the positions of the State and the guidance of the courts seem to be diametrically opposed from decade to decade. The Pueblo Defendants believe that the March 14 Opinion, while it follows *Ysleta I*, is fundamentally flawed for that specific reason—*Ysleta I* ignored the plain language of the Restoration Act, a mistake that metastasizes with each additional ruling.

## II. The United States Supreme Court Promotes Deference to Tribal Understanding of State-Tribe Agreements.

The Pueblo Defendants also direct the Court to recent authority from the United States Supreme Court to further discuss how the United States treats "other tribes." Federal courts owe more deference to tribes than was given by the court in *Ysleta I*.

On March 19, 2019, the Supreme Court released its opinion in *Washington State Department of Licensing v. Cougar Den, Inc*. In *Cougar Den*, the state of Washington intended to impose state fuel taxes on the Yakama Nation, despite a treaty exempting the Yakama from state cigarette, fuel, and sales taxes. In evaluating the interpretation of the agreement struck between the state and the Yakama, the Court explains: "When dealing with a tribal treaty, a court must 'give effect to the terms as the Indians themselves would have understood them.'" *Washington State*

---

[5] Order Regarding Magistrate's R. & R. and Pl.'s App. for Preliminary Inj. at 37, ECF No. 77.

*Dep't of Licensing v. Cougar Den, Inc.*, --- U.S. ---, 2019 WL 1245535, at *2 (U.S. Mar. 19, 2019) (quoting *Minnesota v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172, 196, 119 S.Ct. 1187, 143 L.Ed.2d 270). Moreover, it has long been established that when interpreting federal laws enacted for the benefit of Native American tribes, ambiguities must "be liberally construed, doubtful expressions being resolved in favor of the [tribe]." *Blatchford v. Native Vill. of Noatak & Circle Vill.*, 501 U.S. 775, 795 (1991) (internal citations omitted). This is a benefit never bestowed on the Pueblo Defendants, or indeed the Alabama-Coushatta. Instead, the court in *Ysleta I* preferred the post-hoc interpretation of the State of Texas, and every court since has followed suit.

In *Ysleta I*, the court provided a detailed summary of the legislative negotiations, false-starts, and pressure applied to the Pueblo throughout the process of codifying the Restoration Act.[6] Of particular importance is Tribal Resolution T.C.–02–86 (the "1986 Resolution"), which was approved and certified on March 12, 1986. In the 1986 Resolution, despite severe reluctance, and under obvious duress, the Pueblo agreed that "[g]aming, gambling, lottery or bingo as defined by the laws and administrative regulations of the State of Texas is hereby prohibited on the tribe's reservation and on tribal lands."[7] But even with this agreement, the proposed legislation died.[8]

The following year, Congress removed the language from the 1986 Resolution, redrafting to what was ultimately memorialized in the Restoration Act: "All gaming activities which are prohibited by the laws of the State of Texas are hereby prohibited on the reservation and on lands of the tribe." There is no mention of "administrative regulations." Also present in the final version of the legislation is the oft-litigated phrase: "[nothing in the gambling] section shall be construed

---

[6] *See Ysleta I*, 36 F.3d at 1327–29.

[7] *Id*.

[8] *Id*.

as a grant of civil or criminal regulatory jurisdiction to the State of Texas."[9] The Pueblo understood that the Restoration Act failed when it included the language from the 1986 Resolution, and only passed when the regulatory language was removed.

Furthermore, the Pueblo have argued that its understanding of these legislative changes comported with the intervening holding of *Cabazon Band*.[10] The Restoration Act reflects the influence of *Cabazon Band* more closely than the language of the 1986 Resolution. Accordingly, the Pueblo Defendants have operated under the belief that the plain language of the Restoration Act, *as amended following the failure of Tribal Resolution T.C.–02–86*, existed solely to prohibit the Pueblo from engaging in activity that would be otherwise illegal in Texas, and would not subject the tribe to the "administrative regulations" that were excluded from the final language. But the court in *Ysleta I* did not afford the deference given to the Yakama in *Cougar Den*, and that original sin has infected the jurisprudence concerning the Restoration Act ever since.

### III. The Pueblo Seek Redress through Legislation and Judicial Review.

Since *Ysleta I*, courts have instructed the Pueblo to seek redress not from the courts, but from Congress. The courts, however, are not powerless to correct the misinterpretation of the Restoration Act, notwithstanding the availability of legislative amendment.

The Pueblo are engaged in efforts to address the complications and ambiguities of the Restoration Act through legislative means. But the "twilight zone of state, federal, and sovereign authority" in which the Pueblo Defendants find themselves is largely a construct of judicial, not legislative, action. The plain language of the Restoration Act need not be amended by Congress

---

[9] Restoration Act Section 107(b).

[10] *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 210 (1987) (finding persuasive the arguments of *Seminole Tribe of Florida v. Butterworth*, 658 F.2d 310 (1981)); s*ee also* Motion for Reconsideration at 3.

for the interpretation to be corrected. The Pueblo Defendants believe that they should be given the same deference that has been approved for the Yakama, and that the Pueblo's understanding of the Restoration Act be restored to force, despite the holding in *Ysleta I*. An alternative to legislative change—understandably a large undertaking—would be to seek correction of the flawed interpretation that has bound the hands of courts for 25 years.

In the March 14 Opinion, the court notes that it cannot overturn *Ysleta I* "absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or [the] *en banc* court." March 14 Opinion at 14, n.22. The Pueblo Defendants, in cooperation with the Alabama-Coushatta, seek to do exactly that. As the United States Supreme Court also held, precedent may be overturned when a case "was gravely wrong the day it was decided, [and] has been overruled in the court of history…." *Trump v. Hawaii*, 138 S. Ct. 2392, 2423, 201 L. Ed. 2d 775 (2018). The Pueblo Defendants believe that *Ysleta I* was wrongly decided, failed to accord the proper deference to the Pueblo Defendants' understanding of the Restoration Act when it was finally passed, and has created drastically inconsistent law as a result.

The Pueblo Defendants believe that the March 14 Opinion provides this Court with even more reason to reconsider Order No. 183, and recent rulings from the Supreme Court elucidate the "twilight zone" that has long shrouded the rights and obligations of the Pueblo. For these reasons, as well as those detailed in the Pueblo Defendants' Motion for Reconsideration and Motion to Stay, the Pueblo Defendants respectfully disagree with the State, and ask that the Court reconsider its February 14, 2019 Memorandum Opinion and Order, and stay any contemplated injunction.

Dated March 22, 2019.                    Respectfully submitted,

                                          */s/ Brant. C. Martin*
                                          Brant C. Martin
                                             State Bar No. 24002529
                                          Joseph R. Callister
                                             State Bar No. 24059054
                                          Wick Phillips Gould & Martin LLP
                                          Throckmorton Street #1500
                                          Fort Worth, Texas 76102
                                          Telephone: (817) 332-7788
                                          Fax: (214) 692-6255
                                          brant.martin@wickphillips.com
                                          joseph.callister@wickphillips.com

*Attorneys for Pueblo Defendants/Counter-Plaintiffs*

## HEARING REQUESTED

Given the substantial impact that an injunction would have on the Pueblo and surrounding El Paso community, the Pueblo Defendants request that the Court schedule a hearing and entertain oral argument on the issues set forth in this response and Notice of Additional Authority.

                                           */s/ Brant. C. Martin*
                                           Brant C. Martin

## CERTIFICATE OF SERVICE

I hereby certify that on March 22, 2019, I caused a true and correct copy of the foregoing to be served on all counsel of record by email through the Court's CM/ECF system.

                                           */s/ Brant. C. Martin*
                                           Brant C. Martin